NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 15, 2009
Decided October 28, 2009

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

Nos. 08-2859 & 09-1836

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District Court for the Northern District of Illinois, |
| *Plaintiff-Appellee*, | Eastern Division |
| v. | No. 04 CR 00463 |
| ROBERT SMITH, | Ruben Castillo, *Judge* |
| *Defendant-Appellant*. | |

**ORDER**

After mailing a pipe bomb to the man dating his former girlfriend, Robert Smith was convicted in 2005 of knowingly possessing an unregistered destructive device, *see* 26 U.S.C. § 5861(d), knowingly making a destructive device without first applying or paying taxes, *see id.* at § 5861(f), attempting to destroy a building using an explosive, *see* 18 U.S.C. § 844(i), and using and carrying a pipe bomb in relation to a crime of violence, *see id.* at § 924(c)(1)(A). We affirmed his convictions and sentences on direct appeal. *See United States v. Smith*, 502 F.3d 680 (7th Cir. 2007). Since then Smith has filed not one or two, but three motions for a new trial, *see* Fed. R. Crim. P. 33, a motion to reconsider the denial of one such motion, and a motion requesting the recusal of the district court judge. None of Smith's

filings has succeeded. He now appeals from the district court's denial of his second and third motions for a new trial and his motion for recusal of the district court judge.[1]

As explained more fully in our opinion affirming Smith's convictions, the evidence at trial established that Smith mailed a pipe bomb to an Allstate insurance agency in Crest Hill, Illinois in July 2003. The package containing the bomb was addressed to Leo Bick, who was at that time dating Smith's former girlfriend. Fortunately for everyone involved, Smith's pipe bomb did not work as planned. Although he had rigged it with wires, an ignitor, and a mousetrap so that it would explode when the package was opened, it failed to do so. Instead, the DuPage County Bomb Squad was able to deactivate the pipe bomb. After a year-long investigation, Smith was arrested and charged as described above.

The evidence at trial linking Smith to the bomb was fairly extensive, and included the discovery of his fingerprint on a plastic bag inside the bomb and a piece of hair stuck in the tape holding the bomb together that was a mitochondrial DNA match with Smith's hair. Despite this extensive evidence, Smith continues to assert his innocence and advance various theories in support of his belief that he was framed. In support of his motions for a new trial, Smith claims that new evidence has emerged demonstrating his actual innocence. He asserts that after trial he learned from the Presentence Investigation Report about an allegedly unlawful search of his residence. He also claims that "sniffer dogs" were used to search for explosive powder, and that the dogs alerted to certain areas in the residence. According to Smith, his failure to learn about the use of the dogs before trial suggests that the dogs falsely alerted to the presence of explosive powder, a fact he believes would have somehow undermined most of the other evidence of guilt presented at his trial.

Smith also paints a complicated picture of a conspiracy between Judge Castillo, the law firm of Kirkland and Ellis, and Allstate Insurance Agency that he believes caused Judge Castillo to rule "heavily in favor of the prosecution. " Finally, Smith makes much of the fact

---

[1] Smith first filed an untimely appeal from the district court's June 2008 denial of his third motion for a new trial and his motion for recusal of the district court judge. This court ordered a limited remand to allow the district court to rule on Smith's second motion for a new trial (filed in February of 2008) and determine whether Smith should be granted an extension to appeal from the June 2008 order under Fed. R. Crim. P. 4(b)(4). The district court then extended the time to file a notice of appeal from its June 2008 order, an order which had the effect of making Smith's earlier appeal (No. 08-2859)—which was filed within 30 days of the original deadline for appeal—timely. *See* Fed. R. Crim. P. 4(b)(4). The district court also denied Smith's second motion for a new trial, and Smith filed a timely notice of appeal (No. 09-1836). We have consolidated his appeals for decision

that his trial counsel was a professor at the Bluhm Legal Clinic at Northwestern University School of Law and that Judge Castillo worked at Northwestern as an adjunct professor. The district court denied Smith's motions for a new trial, concluding that he had failed to meet the stringent standards of Rule 33 or offer any information that called into question the "overwhelming" evidence of his guilt. The court also denied Smith's motion for a recusal, deeming it both unnecessary and untimely.

We review the district court's denial of Smith's motions for a new trial under Rule 33 for an abuse of discretion. *See United States v. Acosta*, 534 F.3d 574, 592 (7th Cir. 2008). Smith suggests that the prosecution's failure to inform him of the results of the dog sniff amounts to a *Brady* violation and that a new trial is in order. *See Brady v. Maryland*, 378 U.S. 83 (1963); Fed. R. Crim. P. 33. A new trial is warranted when a defendant has evidence that (1) was discovered after trial; (2) could not have been discovered sooner with due diligence; (3) is material; and (4) would probably result in an acquittal if presented at trial. *United States v. Reyes*, 542 F.3d 588, 595 (7th Cir. 2008).

Smith's allegedly newly discovered evidence falls short of warranting a new trial across the board. First, although his brief suggests that he did not know about the search itself, the search was contested throughout the trial. Thus, the fact of the search is not by any means "newly discovered." Moreover, assuming the results of the dog sniff search were not in fact tendered to Smith's attorney (an unlikely possibility given that Smith's attorney referred to "the report" from the search during trial), they are not material and would not have "probably" resulted in an acquittal. *See Reyes*, 542 F.3d at 595. Smith's theory is that because he did not personally see the results of the testing done on swabs taken from those areas where the dog alerted to explosives, this must mean the swabs tested negative for the presence of explosives. Had he been able to present this information to the jury, Smith theorizes, it would have "opened [a] Pandora's Box for the prosecution" that would have revealed that a government agent "probably planted evidence." On the contrary, evidence that a dog falsely alerted to the presence of explosives would have done little to undermine the extensive evidence presented at trial that Smith was the would-be bomber. In particular, a false positive by an explosive-sniffing dog would not have impacted the verdict in any relevant way. *See United States v. Daniel*, 576 F.3d 772, 775 (7th Cir. 2009) (no *Brady* violation where there was "no reasonable probability" that suppressed information would have led to acquittal); *Reyes*, 542 F.3d at 596 (new trial unwarranted where it was "hard to conceive" how newly discovered evidence would have affected the verdict).

Similarly, we are unconvinced by Smith's insistence that a government agent planted a shotgun shell in the garage during the search. Leaving aside Smith's various theories about how this happened, the evidence of his guilt did not depend on the shotgun shell. Nothing that Smith now advances as "new" evidence casts any doubt on the fact that his

hair and his fingerprint were found on the bomb and its packaging, that he had a post office box at the location used to mail the bomb, and that he had threatened the victim, Leo Bick, in the past and had a motive to harm him. In short, the district court did not abuse its discretion by denying Smith's Rule 33 motions. *See Reyes*, 542 F.3d at 596.

That leaves Smith's claim that Judge Castillo should have recused himself and that his failure to do so warrants a new trial. We review the district court's decision not to recuse himself for abuse of discretion, *see Tezak v. United States*, 256 F.3d 702, 716 (7th Cir. 2001), and we can see none here. As relevant here, a district judge's recusal is warranted only where there is information that supports a finding of actual "bias or prejudice," 28 U.S.C. § 144, or if the judge's impartiality "might reasonably be questioned." 28 U.S.C. § 455(a). Significantly, Smith has failed to comply with the procedures for requesting recusual under either § 144 (requiring defendant to file an affidavit in support of his motion) or § 455 (reviewable only upon a defendant's filing of a writ of mandamus). *See Tezak*, 256 F.3d at 717 & n.16. Moreover, the fact that both Judge Castillo and court appointed counsel worked in different capacities at Northwestern University does not call Judge Castillo's impartiality into question. Likewise, the fact that the law firm of Kirkland and Ellis once employed Judge Castillo and now represents Allstate Insurance (the company for which Bick worked) presents no threat that a "reasonable, well-informed observer," *In re U.S.*, 572 F.3d 301 (7th Cir. 2009), would have questioned Judge Castillo's impartiality. Nor is any of the evidence Smith advances to support his theory of bias "newly discovered" as would be required to warrant a new trial under Rule 33.

For the foregoing reasons we AFFIRM the district court's denial of Smith's motions for a new trial and his motion for recusal of the district court judge.